## DICKSON VS. RICHARDSON AD.

R., by written contract, sold to D. his improvement on unsurveyed public land, binding himself to prove up his pre-emption right to a quarter section, embracing his improvement; and if obtained, make a valid title to D. Previous to the written agreement, R. stated to D., who made a personal examination of the land, and was aware of R's. rights, that he claimed the adjoining lands, supposed to be 640 acres, to conditional lines : and that by common understanding, this claim would be respected. The claim to the adjoining lands was not respected, and the quantity fell short of that supposed : the pre-emption was not proved up by R., who applied to do so, because, by the sale to and possession by D., he alone had the right of pre-emption, which he proved up. HELD, 1st. That there was no such deceit or misrepresentation as would affect the validity of the contract: 2d. That as D. obtained the right to a pre-emption through his purchase from R., it was equivalent, in equity, to a proving up of the pre-emption by R., and transfer of the title to D.

As failure of consideration is a good defence at law, a bill in equity to enjoin a judgment at law, on such plea, should allege that no defence, whatever, was made at law. *Arrington vs. Washington*, 14 *Ark.* 218.

*Appeal from the Circuit Court of Lafayette County in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

PIKE & CUMMINS, for the appellant.

CONWAY, for the appellee.

Mr. Justice WALKER delivered the opinion of the Court.

The pleadings and proofs in this case, when fairly considered, present the following state of case :

In November, 1841, Henry Richardson resided on Red River, in Lafayette county, Arkansas, and was the occupant and owner

of a small improvement, consisting of the ordinary log-cabins for a family residence, and out - houses, and some twenty or thirty acres of cleared land ; and, by a neighborhood arrangement, claimed not only the immediate tract on which his improvements were situated, but also the adjoining lands to conditional·lines, recognized by the adjoining settlers. The public lands were then unsurveyed, and it was not known what quantity there was embraced within this claim, but it was supposed to be about 640 acres, or more.

John Dickson, a resident of the State of Louisiana, desired to purchase a tract of not less than 640 acres, on which to open a cotton farm, and came to Richardson's to purchase his improvement. He examined the improvement, and the adjoining lands, within the bounds of the claim, and was assured by Richardson, that, by common understanding in the neighborhood and country around, that this claim would be respected : but Richardson did not pretend that he had any legal or equitable right to more than the immediate claim on which his improvement was situated. On that, he claimed to be entitled to a pre-emption right, under the laws of the United States. Relying upon this, and after a personal examination of the land, its quality, situation, and quantity, as well as the nature of Richardson's claim to the lands within the conditional lines, as shown him, Dickson consented to buy the claim, and thereupon he and Richardson entered into the following written agreement :

"Know all men by these presents, that Henry Richardson, of the county of Lafayette, and State of Arkansas, of the first part, and John Dickson, of the Parish of East Feliciana, in the State of Louisiana, of the second part, witnesseth : that the said Henry Richardson of the first part, for, and in consideration of the sum of four thousand eight hundred and eight dollars, to him to be paid by the said John Dickson, as hereinafter stated, have this day granted, bargained, sold, and delivered, unto the said John Dickson, his heirs, or assigns, all my right, title, claim, interest and possession, I have to a certain improvement on the public

lands of the United States, situate, lying, and being in the county of Lafayette, on the west side of Red River, being known as the place and improvements on which I, the said Richardson, now reside. And the said John Dickson, of the second part, promises and binds himself, his heirs, &c., to pay to the said Henry Richardson, for the consideration aforesaid, the sum of two thousand dollars, in good merchantable cotton, on the bank of the Mississippi River, at Port Hudson, to be valued at ten cents per pound, on the first day of January, 1842, and the remainder of two thousand eight hundred and eight dollars, the said Dickson promises, and obligates himself to pay to the said Richardson, in two equal instalments, in cotton, delivered at said place, on the Mississippi River, to say, fourteen hundred and four dollars the first day of January, 1843, and fourteen hundred and four dollars, on the first day of January, 1844, in merchantable cotton, at nine cents. per pound.

And the said Henry Richardson, for the consideration aforesaid, binds himself, his heirs, executors, and administrators, to prove up his pre-emption right to a quarter section of land, embracing the aforesaid improvement, and if obtained from the United States, to make, or cause to be made, to the said John Dickson, his heirs, or assigns, a good and valid title in law, to said land. In witness whereof, the parties aforesaid have hereunto set their hands and seals, this 19th of November, 1841.

(SIGNED)                    HENRY RICHARDSON, [SEAL.]
                            JOHN DICKSON, [SEAL.

In pursuance of this agreement, Richardson delivered to Dickson possession of said improvement, upon which Dickson entered and enlarged the improvement.

After the lands were surveyed and became liable to entry, Richardson offered, and attempted to prove up a pre-emption, in virtue of his settlement and improvement upon the land, but was unable to do so, for the reason, that by transferring his claim to Dickson, he was unable to take the necessary oath to entitle him to enter the land; but Dickson, who succeeded him in possession,

was entitled to a pre-emption, and under it, entered the land on which the improvements were situated, upon the same terms, and at as little expense as if the pre-emption had been proven up in the name of Richardson, and transferred to him.

Dickson paid to Richardson the first note for two thousand dollars, and the sum of two hundred and fifty-two dollars and twenty cents on the other note, but refused to pay the residue of the two last payments, for the recovery of which a suit at law was commenced, and judgment rendered thereon in favor of Richardson.

To enjoin this judgment, Dickson brought this suit, and contends that he was deceived with regard to the quantity of the land; that he would not have purchased it, if he had known that there was, within the bounds of the claim, only about 465 acres. That the adjoining claimants did not adhere to the conditional lines shown him by Richardson, but that he has been compelled to buy in some of these claims, in order to protect his claim; that Richardson failed to comply with his agreement to prove up a pre-emption, and that by these means he has been deceived, and the consideration, for which he has executed said notes, has, to that extent, failed.

In this case, the contract was entered into with a full knowledge of the extent and nature of the claim that Richardson had to the improvement, and to the adjoining lands. There was no concealment or misrepresentation of facts which could affect the validity of the contract. The misrepresentations necessary to effect this, must relate to some matter of inducement to make it, in which, from the relative position of the parties, and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other, on account of his superior information and knowledge with regard to the subject of the contract. For if the means of information are alike accessible to both, so that with ordinary prudence, the parties might respectively rely upon their own judgment, they must be presumed to have done so, or if they have not so informed themselves, must abide the consequences of their inattention and carelessness. *Yates vs. Pryor*, 6 *Eng.* 58.

The boundary of the claim was correctly given. The common understanding with regard to the respect paid to settlers' conditional lines, true. The land had not been surveyed, and the quantity embraced within the bounds of the claim, was mere matter of opinion, of which Dickson could inform himself as well as Richardson. But the truth is, that there was nothing sold by Richardson but his improvement and claim. The advantages which might result to the purchaser on account of the extent of the claim beyond the particular tract on which the improvement was situated, and the neighborhood agreement, no doubt entered largely into the consideration and inducement, on the part of Dickson, to buy; but this he took at risk, upon full information, and if he had been compelled to pay ten dollars per acre for the balance of the tract, within the bounds of the claim, we can not see how that could affect the validity of the contract. Richardson did not warrant against this, but Dickson knew, at the time, that it was public lands, and must be subjected to sale; and, consequently, he must risk the chances of buying it. The sale was made according to the written agreement, and we must look to that alone for the contract. It was the sale of a possessory right to an improvement on public lands, with an agreement to prove up a pre-emption on 160 acres, embracing the improvement. This was a valid contract, sanctioned and upheld by the repeated adjudications of this court, and recognized as property, and subject to be sold by the express legislation of our State.

This was not a contract, *not* to bid for public lands or to stifle competition, as is argued by counsel; and, therefore, the authorities cited are inapplicable. There was no agreement to forego bidding, or stifle competition, but there was merely the expression of an opinion, that, according to a common assent and understanding amongst the settlers upon the public land, they would respect the rights of each other, and whether adhered to or not, was solely the risk of Dickson, the purchaser, who must be presumed to have known that any one would have a right to buy or enter the lands, notwithstanding any express contract or agreement by Richardson to the contrary.

But the truth is, that with the exception of about 33 acres, Dickson did enter this whole claim, at $1 25 per acre, the Government price; and it is highly probable that he was enabled to do so by reason of his settlement claim bought of Richardson. It is true, that Richardson did contract to prove up a pre-emption on the land; and it is also true, that he did not do so: but the evidence abundantly shows that he was willing to do so, and did apply, at the proper land office, for that purpose, and was prevented from doing so for the sole reason that he had sold to Dickson, who succeeded to his rights, as a settler, and proved up his pre-emption, and entered the land in his own name. So that, notwithstanding Richardson did not make the proof, Dickson was in no wise the loser thereby, and got the land upon the very same terms, and as perfect a title as if Richardson had entered the land and conveyed it to him. Dickson, therefore, by his purchase, succeeded to rights which Richardson lost; and although the improvement made by Richardson on the land, and sold to Dickson, if estimated by the costs for making it, was comparatively small, compared to that given by Dickson for the claim; still, Richardson, by his sale, no doubt, lost not only his pre-emption, but his chance to secure a valuable tract of land, all of which was secured by Dickson, perhaps in value far above the price given for it by Dickinson. So that upon the whole equity of the case, we think the decree of the Circuit Court should be affirmed.

But there is, over and above this, another ground upon which this decree should be affirmed. The leading feature of this case, is, a failure of consideration. This defence could as well have been made in the suit at law as in equity. *Wheat vs. Dotson,* 7 *Eng.* 699.

The bill is silent as to whether such defence, or any defence was made or not; no exhibit is made of the record of the proceedings at law. It was the duty of the complainant, in stating his case, to have averred that he made no defence at law, or to have shown such facts as would excuse him for coming into chancery, notwithstanding such defence. *Arrington vs. Washington,*

14 *Ark. Rep.* 218.   But the defendant avers that there was a de-
fence to the action at law, made by the defendant in the suit at
law, and no matter what that defence was, whether a plea of
failure of consideration, abatement, or even a demurrer, the rule
is, that by offering such defence, the defendant elects the tribu-
nal before which he will make his defence, and, from that time,
he must make his entire defence in that court, if such as may be
heard by the court.   *Arrington vs. Washington.*

Upon this ground, therefore, as well as upon the merits of the
defence as offered in this court, we think the decree of the La-
fayette court in chancery, should be affirmed.

Absent, Mr. Justice SCOTT.