(January 24, 1905.)

## WATSON v. MOLDEN.

[79 Pac. 503.]

VERDICT OF THE JURY CONCLUSIVE WHEN—FALSE REPRESENTATIONS— RELIANCE THEREON—SHARES OF STOCK IN AN INCORPORATED CANAL COMPANY—PERSONAL PROPERTY—STATUTE OF FRAUDS—ASSIGN- MENTS OF ERROR ONLY CONSIDERED WHEN.

1. Where there is a substantial conflict in the evidence on the material issues involved, the verdict of the jury must stand.

2. Where M. states to W. that certain things pertaining to the sale of shares of stock in a canal company are true, also facts pertaining to the sale of his interests in certain lands are true, and is informed by W. that he will rely upon his statements, and purchases such shares of stock and the interest of M. in the land wholly relying upon the representations of M., and such statements are afterward found to be false and resulted in inducing

W. to purchase. *Held,* that M. must respond in damages for his false and fraudulent statements.

3. Where it is shown that W. is a stranger and unaccustomed to the wants and needs of water for irrigation of desert land, and M. is a real estate dealer accustomed to the necessity and amount of water per acre for the irrigation of land that he possesses in person by entry under the desert land laws of the United States, W. may rely upon the statements made by M., especially when he informs M. of his want of knowledge and information pertaining to such lands and stock.

4. Certificates of shares of stock in an incorporated canal or ditch company are personal property under the provisions of section 2611, Revised Statutes.

5. Errors will not be considered in this court where it is shown by the record that the matters complained of were not raised on the motion for new trial and urged in the lower court.

(Syllabus by the court.)

APPEAL from the District Court of Bingham County. Honorable James M. Stevens, Judge.

Action for damages; judgment for plaintiff, from which and an order overruling a motion for new trial, defendant appeals. Affirmed.

The facts are stated in the opinion.

Chalmers & Jones, for Appellant.

As a general proposition, no reliance can be placed on statements as to facts which are obvious or of which the defendant party has knowledge, or which are indefinite or suspicious, or which are not regarded as statements of fact, as opinion, trade talk, etc., or where the means of knowing the truth are at hand and it could be known by exercising the diligence of an ordinary prudent man. The Idaho court in stating this principle declares that in cases of this character it must be alleged and proved "That plaintiff was fraudulently induced to forbear inquiry as to the truth of the representations of the defendant." Another means of stating the doctrine that the purchaser has no right to rely on the statements of the vendor concerning matters where the means of knowing the truth are open to both. The plaintiff relies for the support of his verdict solely upon

the proposition that the defendant failed, neglected and re-fused to transfer or convey to him the amount of water or water right which he agreed to convey. The evidence as to what the agreement was may be considered somewhat conflicting, but at any rate it appears to have been wholly verbal, and not in writing. In Idaho, ditch and water right are real property. (Idaho Rev. Stats., secs. 2825, 6007, 6009, subd. 5; *Ada Co. Farmers' Irr. Co. v. Farmers' Canal Co.,* 5 Idaho, 793, 51 Pac. 990, 40 L. R. A. 485; *Hall v. Blackman,* 8 Idaho, 272, 68 Pac. 19; *McGinness v. Stanfield,* 6 Idaho, 372, 55 Pac. 1020.) The Idaho statute making such a contract "invalid" is tantamount to making it void. (*Dung v. Parker,* 52 N. Y. 496, 497; *Dunphy v. Ryan,* 116 U. S. 495, 6 Sup. Ct. Rep. 486, 29 L. ed. 703; *Welch v. Whelpley,* 62 Mich. 15, 4 Am. St. Rep. 810, 28 N. W. 676; *Wakefield v. Greenhood,* 29 Cal. 598.)

F. S. Dietrich, for Respondent.

Even when a statement by the vendor as to the value of the property is in question, it is for the jury to say whether or not the statement is one of fact, such as will subject the vendor to a charge of fraud, or is a mere expression of opinion upon which the vendee cannot rely. (*American Nat. Bank v. Hammond,* 25 Colo. 367, 55 Pac. 1090; *Oakes v. Miller,* 11 Colo. App. 374, 55 Pac. 193; *Fargo Coke Co. v. Fargo Gas Co.,* 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593; *Mead v. Bunn,* 32 N. Y. 280; *Redding v. Wright,* 49 Minn. 322, 51 N. W. 1056; *Cabot v. Christie,* 42 Vt. 121, 1 Am. Rep. 313; *Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 497.) In view of the record in this case, as we shall see, it is perhaps unimportant to discuss the question whether or not the property to be conveyed was personal property or real estate. We concede that in this jurisdiction water rights, strictly speaking, are classed as real estate; but in the transaction under consideration it is clear that the property which the defendant contemplated transferring was personal property. It is agreed that the water right was to be in the People's Canal and Irrigation Company, a corporation. It is further conceded by all parties that such water rights were and are evidenced smply by the capital stock of the corpor-

ation, and that the rights were transferred solely by the transfer of certificate of stock, in the ordinary mode of transferring corporation stock. Upon any theory the defendant has not kept the agreement which he conceded both by his answer and testimony; that is, to transfer enough water for eighty acres. (Idaho Rev. Stats., sec. 2611; *Wells v. Price,* 6 Idaho, 490, 56 Pac. 266.) This court has repeatedly recognized an oral contract, relating to transfer of water and ditch rights as binding after one party thereto has performed. (*Male v. LeFlang,* 7 Idaho, 348, 63 Pac. 108; *Deeds v. Stephens,* 8 Idaho, 514, 69 Pac. 534; *Francis v. Green,* 7 Idaho, 668, 65 Pac. 362; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033; *Feeny v. Chester,* 7 Idaho, 324, 63 Pac. 192.)

STOCKSLAGER, C. J.—This case is here on appeal from the judgment of the district court of Bingham county, and from an order overruling a motion for a new trial. It seems that appellant in June, 1902, was in possession, by virtue of a desert entry under the United States land laws, of two hundred and forty acres of land in Bingham county, his entry bearing date June 14, 1902. It is alleged in the complaint that on or about June 17, 1902, defendant (appellant here) showed said lands to plaintiff (respondent here) and represented to plaintiff that he had a sufficient water right for said lands, and would sell to plaintiff all his right and interest in and to said lands, together with a good and sufficient water right, at the rate of one inch to the acre, for the sum of $800; that at said time plaintiff was a stranger in Idaho, having recently come from Iowa, and had never lived in or had any experience in or with a country where irrigation is required for raising crops, and knew nothing about the amount of water required to irrigate an acre of land, or the mode of irrigation, all of which was well known to defendant at all times during the negotiations relative to the transaction. It is next alleged that plaintiff knew nothing about the boundaries of said tract of land and relied wholly upon the representations made by defendant in pointing out the said land and the boundaries thereof, all of which defendant well knew; that defendant represented to plaintiff that in all probability there was not more than five acres, and stated positively that there was not to exceed fifteen acres, at most, that

were rough or rocky or incapable of practicable irrigation. That wholly relying upon defendant's representations that there was not to exceed fifteen acres of waste land in the two hundred and forty acres described, and that defendant would furnish with said land a good and sufficient water right for said land in the amount of two hundred and forty inches, and, being induced thereby, as defendant well knew, the plaintiff made an agreement with defendant to purchase the defendant's interest in said land, including said water right, for the sum of $800, and plaintiff paid to defendant said sum of $800, and defendant assigned to plaintiff defendant's entry of said lands in the United States land office, and delivered to plaintiff fourteen (14) shares of the capital stock of the People's Canal and Irrigation Company, a corporation; that said purchase price was paid to defendant before said stock was turned over to plaintiff by defendant. That in order to induce plaintiff to take said stock, defendant represented to him that each share of stock in said corporation entitled the holder thereof to the use of twenty-five (25) inches of water from the canal of said company; and the defendant further stated and represented that the plaintiff could conduct said water from the canal of said Canal and Irrigation Company to the said lands at a cost of not to exceed $50, and further represented that he, plaintiff, would have the right to conduct said water through what is known as the American Falls Canal and Power Company's canal, which lies near said lands. That after plaintiff had paid the defendant the full consideration for said land and water right, and when defendant came to deliver said certificates of stock for fourteen (14) shares as aforesaid, plaintiff objected to receiving the same, but upon the assurance of the defendant that said certificates entitled the holder to the use of water considerably in excess of two hundred and forty (240) inches, and that the same represented a good and sufficient water right for said lands, and that said waters could be conducted through the American Falls Canal Company, and could be taken from said People's canal to said lands at an expense not to exceed $50, plaintiff being a stranger and wholly ignorant of his rights as a holder of said stock and wholly relying upon said representa-

tions made by defendant, as defendant well knew, received said certificates of stock. That said representations by defendant to plaintiff were false and fraudulent and were knowingly made by the defendant for the purpose of inducing plaintiff to make said purchase and pay to defendant said money, and were untrue, and defendant violated his agreement with plaintiff, to wit: At least seventy (70) acres of said land, instead of fifteen, are broken and rocky and are waste lands and practically worthless. That the fourteen (14) shares of stock delivered by defendant to plaintiff as evidence of the water right for said lands do not, and did not, entitle the holder to two hundred and forty inches of water or any amount in excess of one hundred (100) inches; that plaintiff is informed and believes that said right is not clear, being burdened with an indebtedness, in that said canal company owes practically over $10,000, secured by mortgage upon its canal system and water right, and that said stock is assessable to pay said indebtedness, and that the rights of the holder of said fourteen (14) shares of stock are subject to said indebtedness and are burdened thereby. That the holder of said stock is not entitled and has no right to convey any portion of the water represented by said stock, or any water in the People's Canal and Irrigation Company's canal through any portion of the canal of the American Falls Canal and Power Company. That it is not practicable to conduct water from the People's Canal and Irrigation Company to any portion of said lands, for the reason that there is no ditch or canal leading from said main canal to said lands, and it is financially impossible so to do; that is to say, it would cost to construct a lateral ditch from the canal of said People's Canal and Irrigation Company to said lands an amount far in excess of what a water right could possibly be worth, and instead of costing $50, as represented by defendant, it would cost approximately $2,000 to conduct said waters from the point where plaintiff would have a right to receive said waters by reason of the fact that he holds said stock to said land.

Then follows an allegation that by reason of the violation by defendant of this agreement to deliver to plaintiff at least two

hundred and twenty-five acres of irrigable land, and a good and sufficient water right to the amount of two hundred and forty inches measured under a four-inch pressure at a point from which it would not cost to exceed $50 to conduct the same to said lands, plaintiff has been damaged in the sum of $2,500. That in order to amicably compromise and adjust this matter with defendant, plaintiff offered to rescind said contract of purchase and deliver back to defendant said lands and water stock upon condition that defendant would reimburse plaintiff the money which he, plaintiff, had paid, which offer was by defendant refused. That defendant has refused to make any reparation to plaintiff of any kind and has refused to furnish or turn over to plaintiff any other, greater or additional water right than as evidenced by said shares of stock.

Prayer for judgment for $2,500 damages follows.

A demurrer was filed to this complaint, to wit: That said complaint does not state facts sufficient to constitute a cause of action against the said defendant. On May 25, 1903, this demurrer was overruled by the court. On June 6, 1903, defendant filed his answer and admits that he showed to the plaintiff the lands described in the complaint, but that it was at the special instance and request of plaintiff. Denies the allegation of the plaintiff as to representations of the water right for the whole of said land or any part or portion thereof, except eighty acres of the same, or that he had any water right whatever for said land except that which was represented by the fourteen (14) shares of the capital stock of the People's Canal and Irrigation Company; denies all the allegations as to the sale of a water right in excess of eighty inches to go with said land, for the sum of $800, and alleges the fact to be in this respect that he did promise and agree to sell and deliver with said land the fourteen (14) shares of capital stock aforesaid; which he did then and there sell and deliver substantially as alleged in the complaint. That he then and there stated to the plaintiff that in his opinion and belief the said stock represented at that time about eighty inches of water measured under a four-inch pressure per share, and that the water values of said stock would probably increase thereafter as it had theretofore. That

he further cautioned and advised plaintiff that before complet-ing said sale and purchase he should go and see the secretary of said company as to the water value of said stock, and the possibility and practicability of obtaining the water for use upon said land.

As to the allegation of plaintiff's experience in and want of knowledge concerning irrigation and placing his denial on that ground, denies that allegation; denies positively that such mat-ters last mentioned were ever known to defendant; denies all the allegations of the complaint of statements alleged to have been made by him to plaintiff as to the boundaries of the land, or that in all probability there were not more than five acres, or that positively there were not to exceed fifteen acres at most of said land which were rough or rocky or incapable of irriga-tion. Alleges the fact to be that he conducted the plaintiff to and upon the higher portions of said ground and pointed out the portions which, in his opinion it would be impracticable to irrigate, saying nothing whatever as to the number of acres; alleges that he has since learned that it is feasible and practicable to conduct water upon and irrigate every acre and smallest le-gal subdivision of said two hundred and forty acres from the ditches and canals which are established in that locality; denies that any representations whatever made by defendant to plain-tiff were false or fraudulent for any reason whatever; denies that the shares of stock transferred to plaintiff entitled the plaintiff to no more then one hundred inches of water, but al-leges, as stated by defendant to plaintiff at the time, they rep-resented one hundred and twelve inches of water, and now by reason of repairs and improvements made in, upon and along said People's canal, each of said shares entitles the holder to ten inches of water measured under a four-inch pressure. As to the allegation of plaintiff with reference to the $10,000 in-debtedness against the People's Canal and Irrigation Company, defendant says that notwithstanding the fact that a mortgage was on record in Bingham county showing such indebtedness, he advised and notified the plaintiff that such a mortgage ex-isted and was then in force, for the said sum.

Answering the allegation that plaintiff upon certain conditions, to wit, the return of the $800 paid by plaintiff to the defendant, says that under the general government of the United States he lost and forfeited all his rights and privileges to enter land under the public land laws, except the right of homestead entry.

A jury trial was had and a verdict returned in favor of the plaintiff for the sum of $435; judgment accordingly.

A large number of assignments of error are enumerated in the record, but we find only a few of them are urged in appellant's brief. Appellant's counsel earnestly insists that "the verdict is not supported by the evidence." In his brief he says: "There is a direct contradiction of Mr. Watson's uncorroborated testimony by Mr. Madden as to the price first asked for the land." An examination of the record discloses that this statement is supported by the evidence contained in the record, and we may say that there are contradictions on nearly every material issue submitted to the jury. Under a long, well-established rule of this court, where it is shown that the case was submitted to a jury, they having passed upon all questions of differences as to the facts in the case, the trial court having refused a new trial, this court will refuse to disturb the judgment on this ground. The reasons for this conclusion have been frequently discussed by this court. It seems to me that all the trouble arising over this question grows out of the apparent difficulty in distinguishing between conflicting evidence and an entire lack of evidence to support the verdict of the jury. Modern decisions are almost a unit in holding that where there is a substantial conflict in the evidence upon the material issues involved, the verdict of the jury should not be disturbed by the appellate court. On the other hand, it is equally true that where the record fails to show any conflict in the evidence of a substantial character and on the material issues, and it is also shown by the record that there is not sufficient evidence of the above character to support the verdict, then it is the duty of the trial court to disregard the verdict by granting a new trial. If that court fails to do so then this court will reverse the judgment and order a new trial. This question being disposed of,

we come to the more serious question urged by appellant, to wit: *False representations:* There is a direct and radical conflict in the evidence on this issue presented by the complaint and put in issue by defendant's answer, plaintiff testifying to certain conditions and statements made by defendant as to the surface condition of the land, the water right he proposed to transfer to go with the land, the expense of getting water upon the land sufficient for its proper irrigation, the source from whence said water was to be procured, the fact that he was a stranger in the country and entirely unaccustomed to the proper irrigation and needs of the desert land to successfully grow crops, and hence wholly and entirely dependent upon the representations of the defendant for information pertaining to all these questions.

The defendant with equal emphasis testifies that he made no false statements to plaintiff; that in the relinquishment of the desert entry to the lands in controversy and the assignment of the shares of stock in the "People's Canal and Irrigation Company," he did all he had agreed to do for the consideration of eight hundred dollars paid to him by plaintiff. That the jury passed upon this question in dispute by the respective parties to the action is evidenced by the instructions of the court. The very first one reads as follows:

"Gentlemen of the jury: You are instructed that in the consideration of the testimony in this case, your first inquiry should be, What was the agreement of the parties relative to the transaction of the sale referred to in the pleadings and testified to by the parties themselves? Upon this issue, as you will have observed, there is a material conflict between testimony of the parties, and it will be your duty to determine from the testimony of the parties and all the surrounding circumstances in evidence which party has told the truth, the plaintiff or the defendant." The court further said to the jury in this instruction that if they accepted the statements of the defendant as true the plaintiff could not recover; and, on the other hand, if they believed the plaintiff had truthfully related the facts and circumstances surrounding the transaction, he was entitled

to recover his actual damages. From the quotation marks we only give the substance of the instruction. This instruction was certainly fair and correctly stated the law, and no exception was taken to it by either party. It seems that all instructions requested by either party were given by the court, and we find no exception to any of them in the record, hence we conclude that so far as the law of the case was concerned both parties were satisfied.

The third instruction requested by defendant and given by the court follows: "The jury are instructed that in order that the plaintiff may avail himself of the action of fraud set up in the pleadings in this case, the jury must believe from the evidence, not only that the statements and representations set forth in said pleadings were made, but also such statements and representations were false; that they were made with intent to deceive and defraud the plaintiff—that the plaintiff was induced thereby to enter into the contract and that he has sustained damages by reason thereof."

Counsel for defendant requested twenty instructions, all of which were given by the court without modification. They covered every question raised by the pleadings, and were certainly not unfavorable to the defendant.

Counsel for appellant cites a number of authorities to support his contention, but a careful examination of them does not support him in all he claims for them. He cites *Brown v. Bledsoe,* 1 Idaho, 746, rendered in 1879. The court, in stating what the complaint must allege, says: "1. That the representations made by defendants were false; 2. That defendants knew them to be false; 3. That they made them with intent to defraud plaintiff; 4. That such representations were material and not matters of opinion; 5. That the plaintiff relied upon such representations in making the contract or doing the act from which such damages arose; that plaintiff was fraudulently induced to forbear inquiry as to the truth of the representations made by defendant." It seems that the complaint in the above case was deficient in all these particulars, and a demurrer was sustained to its sufficiency. There is no comparison in the facts of the above case and the one at bar. In the Brown-

Bledsoe case the statements were in reference to certain mining property and were easily within the power of the plaintiff to ascertain. It involved the payment of $20,000 and belonged to that class of transactions that depend upon an examination and report of an expert.

Our attention is next called to *Frenzel v. Miller,* 37 Ind. 1, 10 Am. Rep. 62 (decided in 1871) ; *Bigby v. Powell,* 25 Ga. 244, 71 Am. Dec. 168; *Commissioners S. J. v. Younger,* 26 Cal. 176; *Yeates v. Pryor,* 11 Ark. 58; *Dickson v. Richardson,* 16 Ark. 114; *Long v. Warren,* 68 N. Y. 426. A number of other cases are cited, but we do not find them unanimous or many of them holding that under the facts in the case at bar the plaintiff could not recover.

In *American Nat. Bank of Denver v. Hammond,* 25 Colo. 367, 55 Pac. 1090, the fourth clause of the syllabus says: "False representations are actionable only when relied and acted upon." The fifth clause says: "The question whether such statements as to the value of the stock were mere expressions of opinion, and not statements of fact, was for the jury." (*Oakes v. Miller,* 11 Colo. App. 374, 55 Pac. 193.)

In the fourteenth volume of American and English Encyclopedia of Law, 120, the following language is used in the text: "By the overwhelming weight of authority, ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself." A long list of authorities are collated to support this text. Again at page 122, same volume, it is said: "Some of the courts and many individual judges have gone so far as to lay down the rule broadly that a person is entitled to relief on the ground of fraud in the case of positive false representations, intended to be relied upon and to deceive, notwithstanding he had a present opportunity of discovering that the representations were false, and might have known the truth by proper examination and in-

quiry, and notwithstanding his means of knowledge were equal to those of the other party. Though there are decisions to the contrary, this view is supported by the better reason, and is in accord with the unmistakable drift of opinion as shown by the later cases. This doctrine is held in the later English cases." This text is also supported by numerous authorities. In *Fargo Gas & Coke Co. v. Fargo Gas & Electric Co.,* 4 N. Dak. 219, 59 N. W. 1066, Mr. Justice Corliss, after discussing the facts and the law, in a very instructive and interesting way, says: "The defendant as a matter of law had a right to rely implicitly upon the statements made by the plaintiff touching the character of this plant; so long as the defendant did not actually know the representations to be false it was not under any obligations to investigate to determine their truth or falsity." This action involved the sale of the Fargo Gas and Coke Company to the Fargo Gas and Electric Company. Plaintiff sued for balance on the contract. Defendant set up defense of partial failure of consideration from the nondelivery of some of the property purchased, and also a counterclaim for damages arising out of the alleged deceit of the plaintiff making the sale. The court, after commenting upon numerous authorities, uses this very strong and pertinent language: "The unmistakable drift is toward the doctrine that the wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim."

See, also, *Mead v. Bunn,* 32 N. Y. 280; *Redding v. Wright,* 49 Minn. 322, 51 N. W. 1056; *Cabot v. Christie,* 42 Vt. 121, 1 Am. Rep. 313; *Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 497. A number of other cases are cited by respondent, all tending to show that the modern authorities have relaxed the rule prevailing in the earlier cases involving a settlement of this much disputed question. It is difficult to establish a fixed rule for the government of cases of this character. It is seldom that two cases are found with the same state of facts existing, and the rule seems to be that each case is dependent upon its own particular facts, bearing in mind at all times that the law does not countenance fraudulent statements or misrepresentations made for the purpose of deceiving an intending purchaser. If such facts are shown by the record to exist, the courts will refuse to grant him relief for his wrongful acts.

It is next urged by counsel for appellant that plaintiff re-
lies for the support of his verdict solely upon the proposition
that the defendant failed, neglected and refused to transfer or
convey to him the amount of water or water right which he
agreed to convey. He says "that the transfer was only verbal
and not in writing." He further says: "The case is thus brought
manifestly within the statute of frauds," and cites section 2825,
Revised Statutes, to show that "in this state a ditch and water
right are real property." It is true that this court in a number
of decisions has held that a ditch and water right are real
property. In *Ada Co. Farmers' Irr. Co. v. Farmers' Canal Co.,*
5 Idaho, 793, 51 Pac. 990, 40 L. R. A. 485, the court held
that "Under the provisions of section 2825, Revised Statutes,
possessory rights to ditch and water rights are real property
or real estate."

In *McGinness v. Stanfield,* 6 Idaho (Hasb.), 372, 55 Pac.
1020, the question before the court was the sufficiency of a ver-
bal sale of a ditch and water right. The same was true in *Hall
v. Blackman,* 8 Idaho, 272, 68 Pac. 19. None of these actions
involved stock representing water in a canal company. All that
can be said in support of appellant's contention is that after pur-
chasing the stock of the canal company, completing a lateral
ditch and turning the water into the ditch (under the above de-
cisions) would make the ditch—hence the water—real estate.
All that defendant attempted to sell or that plaintiff believed
he purchased was so many shares of stock in a canal company,
which passes by assignment and delivery. This being true the
property sold was only personal property.

In *Wells v. Price,* 6 Idaho, 490, 56 Pac. 266, this court held
that an attachment of land upon which water was being used
from a certain irrigating ditch, the defendant owning certain
shares of stock in the corporation owning the ditch, the ditch
or canal did not include the shares of stock.

Section 2611, Revised Statutes, seems to settle the question
as to the status of the property—"shares of stock in a corpora-
tion." It says: "Whenever the capital stock of any corpora-
tion is divided into shares and certificates therefor are issued,
such shares of stock are personal property and may be trans-

ferred by indorsement by the signature of the proprietor or his attorney or legal representative and delivery of the certificate."

Counsel next urges that the bar of the statute of frauds can be taken advantage of under a general denial of the contract, and cites authorities. It is not necessary to pass upon this question in this case with the record before us. Neither in the motion for a new trial nor the specifications of error do we find the attention of the lower court directed to this question. Specification 36 is "that the verdict, decision and judgment together are against the law." Speaking of this specification counsel for respondent well says: "Such a specification is in law no specification at all. It points out nothing and is universally held to be ineffective as a specification."

Other errors are assigned, but in our view of the case it is unnecessary to consume further time in discussing them. The jury passed upon the controverted facts with a large amount of conflicting evidence before it, and found for the plaintiff, and we find no error in the ruling of the court as to the law of the case.

The judgment is affirmed. Costs awarded to respondent.

Ailshie, J., and Sullivan, J., concur.