CHESAPEAKE & OHIO RAILWAY COMPANY *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF WEST VIRGINIA.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

No. 64.  Argued November 3, 1916.—Decided February 5, 1917.

Following the court below, it is *held*, that a law of West Virginia, viz., Acts 1881, c. 17, §§ 69, 71; Code 1913, c. 54, §§ 2983, 2995, in declaring that "railroads" shall be public highways "free to all persons for the transportation of their persons and property," embraces a branch line constructed and operated under it, and imposes on the carrier with respect to such line a continuing franchise obligation to

transport passengers as well as freight; and that such obligation may be enforced by state action although the carrier has long operated the branch in freight traffic only and never in any other.

The duty to provide adequate transportation facilities for the public, which arises with the acceptance and accompanies the enjoyment of the privileges which a railroad company receives from a State, cannot be avoided merely upon the ground that performance will be attended by some pecuniary loss.

In passing upon the reasonableness of a state order requiring transportation service, the fact that a pecuniary loss will result to the carrier is not the only circumstance to be considered; the nature and extent of the carrier's intrastate business, its productiveness, the character of service required, the public need for it, and its effect upon the service already being rendered, are to be considered also.

75 W. Va. 100, affirmed.

THE case is stated in the opinion.

*Mr. F. B. Enslow*, with whom *Mr. H. Fitzpatrick* was on the briefs, for plaintiff in error.

*Mr. S. B. Avis* and *Mr. F. C. Pifer* for defendant in error, submitted.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a proceeding under the laws of West Virginia (Acts 1913, c. 9, §.16) to suspend and vacate an order of the Public Service Commission of that State requiring the Chesapeake & Ohio Railway Company to install and maintain upon a branch line in that State a passenger service consisting of two passenger trains daily each way. The order was assailed on several grounds, one of these being that it was violative of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. The Supreme Court of Appeals of the State held that none of the objections was tenable, 75

W. Va. 100, and the railway company brought the case here.

In so far as the decision turned upon questions of state law it is controlling, our power of review being restricted to the federal question. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 75.

The order was made after a full hearing wherein the railway company was permitted to present all the evidence which it regarded as helpful. There was but little conflict in the evidence and the facts which must here be regarded as proved are these: The railway company is a Virginia corporation and owns and operates several lines of railroad in West Virginia, including a main line along the Kanawha River. This line consists of two tracks, one on the north side of the river for west-bound trains and one on the south side for trains that are east-bound. Among the stations on the north side is one called Hawks Nest, and across the river is another called MacDougal, the two being connected by a railroad bridge. The main line and these stations are used for both freight and passenger traffic. The company also owns and operates a standard gauge branch line extending from MacDougal and Hawks Nest to the town of Ansted, a little more than two miles, and thence another mile to some extensively operated coal mines. This is the branch line to which the order in question relates. Ansted has a population of twelve hundred or more and is the trading center for a population of six thousand. The branch line was constructed in 1890 and has been used for freight traffic only, that is to say, for hauling empty cars to the coal mines and loaded cars from the mines to the main line, and for carrying other freight between the main line and Ansted. The railway company has a freight station at Ansted in charge of an agent and helper, and also maintains a telegraph service there. There is no other railroad at that place and the nearest passenger stations are Hawks Nest and MacDougal. In

the year preceding the order the number of passengers
taking the main line passenger trains at these stations was
12,714, and of this number ninety per cent. came from
Ansted. In the same year the shipments of coal and other
freight over the branch line aggregated 242,280 tons.

From an operating standpoint there is no serious ob-
stacle to installing upon the branch line the service which
the order requires, but the curves and grades are such that
particular attention must be given to making the road-bed
secure and to providing suitable devices for controlling
the trains. Isolatedly considered, such a passenger serv-
ice would not presently be remunerative but would en-
tail a pecuniary loss, and how long this would continue
to be true can only be conjectured. But beyond this the
effect from a revenue standpoint of installing such a
service is not shown. It does not appear either that the
company's intrastate passenger business in that State
would not yield a reasonable return, or that the traffic,
freight and passenger, passing over the branch line to and
from points on the main line would not do so.

In support of its position that the order is essentially
unreasonable and arbitrary, and therefore repugnant to
the due process and equal protection clauses of the Four-
teenth Amendment, the railway company contends that
the order requires a passenger service to be installed and
maintained upon the branch line when that line never has
been devoted to anything other than the transportation
of freight and when the service ordered, if separately con-
sidered, cannot be rendered without pecuniary loss.

It well may be that the power of regulation which a
State possesses over private property devoted to public
use gives no warrant for requiring that an existing line of
railroad lawfully devoted to a particular public use, such
as carrying freight, shall be devoted to a further public
use, such as carrying passengers, *Northern Pacific Ry. Co.*
v. *North Dakota*, 236 U. S. 585, 595; but, even if this

be so, it has no bearing on the validity of the order in question.

As the opinion of the state court shows, the act whereby the railway company was granted the right to construct and operate the branch line did not leave the company free to devote it to freight service only or to passenger service only, but declared that it should be a public highway and "free to all persons for the transportation of their persons and property," subject to the payment of the lawful charges for such transportation. Acts 1881, c. 17, §§ 69, 71; Code 1913, c. 54, §§ 2983, 2995. True, the section containing this declaration speaks of "railroads" without particularly mentioning branch lines, but that it embraces the latter is shown by the state court's opinion, which says that this branch line, when constructed, "became an integral part of the extensive Chesapeake & Ohio system, and must be treated and controlled as such, and not merely as a segregated part of it." Thus, in legal contemplation, the branch line was devoted to the transportation of passengers as well as of freight, even though actually used only for the latter. An obligation to use it for both was imposed by law, and so could not be thrown off or extinguished by any act or omission of the railway company. It follows that the order, instead of enlarging the public purpose to which the line was devoted, does no more than to prevent a part of that purpose from being neglected.

One of the duties of a railroad company doing business as a common carrier is that of providing reasonably adequate facilities for serving the public. This duty arises out of the acceptance and enjoyment of the powers and privileges granted by the State and endures so long as they are retained. It represents a part of what the company undertakes to do in return for them, and its performance cannot be avoided merely because it will be attended by some pecuniary loss. *Atlantic Coast Line Railroad Co.* v. *North Carolina Corporation Commission*, 206 U. S. 1, 26;

*Missouri Pacific Ry. Co.* v. *Kansas,* 216 U. S. 262, 279; *Oregon Railroad & Navigation Co.* v. *Fairchild,* 224 U. S. 510, 529; *Chicago, Burlington & Quincy R. R. Co.* v. *Wisconsin Railroad Commission,* 237 U. S. 220, 229. That there will be such a loss is, of course, a circumstance to be considered in passing upon the reasonableness of the order, but it is not the only one. The nature and extent of the carrier's business, its productiveness, the character of service required, the public need for it, and its effect upon the service already being rendered, are also to be considered. Cases *supra.* Applying these criteria to the order in question, we think it is not shown to be unreasonable.

*Judgment affirmed.*