(No. 7041. February 26, 1943.)

IN THE MATTER OF THE APPLICATION OF THE UNION PACIFIC RAILROAD COMPANY, APPELLANT, TO ABANDON CERTAIN TRAIN SERVICE BETWEEN CACHE JUNCTION, UTAH, AND PRESTON, IDAHO, AND BETWEEN OGDEN, UTAH, AND MALAD, IDAHO.[1]

[134 Pac. (2d) 1073.]

[1]We have revised the title of this case to conform to the requirements of Rule 37 of this court and the decision in Gardner v. Blaine County, 15 Ida. 698, 99 P. 826.

George H. Smith, H. B. Thompson and L. H. Anderson for appellant.

Bert H. Miller, attorney general, Ariel L. Crowley, assistant attorney general, Robert M. Kerr, Jr., formerly assistant attorney general, for respondent.

George R. Phillips and P. J. Evans for protestants.

BUDGE, J.—The following statement of facts appears in appellant's brief, over which there seems to be no dispute, to-wit:

"The latter part of August, 1941, the Union Pacific Railroad Company filed with the Public Service Commission of Utah an application for authority to discontinue its trains 553 and 554 between Cache Junction, Utah, and Preston, Idaho, and trains 559 and 560 between Ogden, Utah, and Malad, Idaho.

"Following the filing of this application with the Utah Commission the Idaho Public Utilities Commission having been informed of the application filed in Utah issued its Order No. 1755 on September 13, 1941, directed to the Union Pacific Railroad Company to show cause why such trains should not be continued under their present schedules in order to provide 'proper service for both persons and property within the State of Idaho.' Joint hearings were held by the Public Service Commission of Utah and the Public Utilities Commission of Idaho at Ogden, Utah, on October 13, 1941, and at Preston, Idaho, on October 14, 1941. On December 30, 1941, the Idaho Public Utilities Commission made and entered its Order No. 1765 requiring the Union Pacific Railroad Company to maintain the service between the Utah-Idaho state line and Preston, Idaho, and between the Utah-Idaho state line and Malad, Idaho, and that the operation of the trains in question be continued, which order was received by the Railroad Company on January 24, 1942. Following the receipt of the order of the Commission and within the time required by law appellant served and filed its petition for rehearing, which was on the 17th day of March, 1942, by the Commission denied. From the order requiring the Railroad Company to continue the service of the trains in question and from the order denying the petition for rehearing the Railroad Company has appealed to this court for a review of the Commission's order.

"Trains 553 and 554 are motor passenger trains and operate between Cache Junction, Utah, and Preston, Idaho, a distance of 51 miles. * * * and only two stations are located in Idaho on this branch where any passenger business is handled, to-wit: Franklin and Preston. Trains 559 and 560 operate between Ogden, Utah, and Malad, Idaho, a distance of 73 miles. * * * and only two stations are located in Idaho on this branch which handle any passenger business, to-wit: Cherry Creek and Malad. The Railroad Company proposed to take off these passenger motor cars and to substitute in lieu thereof mixed trains, which means that the Company would place a passenger and baggage car on its existing freight trains, to handle any passengers, baggage and express that may require transportation."

We shall hereafter refer to the Public Utilities Commission as the "Commission" and the Union Pacific Railroad Company as the "Railroad Company" for brevity.

At the conclusion of the hearing and consideration by the Commission of testimony introduced by all parties, the Commission made its findings of fact and order, to-wit:

"1. We find that the Union Pacific Railroad Company is a public service corporation organized under and by virtue of the laws of the State of Utah and has been authorized under the laws of the State of Idaho to engage in the railroad transportation business in Idaho.

"2. We further find that the trains in question, Nos. 553 and 554 operating between Cache Junction, Utah, and Preston, Idaho, and Nos. 559 and 560 operating between Ogden, Utah, and Malad, Idaho, are branch lines of the Union Pacific system and this Commission has jurisdiction over an abandonment of such service.

"3. We find that these trains, if considered apart from the other operations of these branch lines, are not operated at a profit, but from the record we are unable to determine the amount of the deficit.

"4. We find that the service performed by these trains has been allowed, either deliberately or otherwise, to deteriorate with a consequent loss of patronage.

"5. We find that the operation of these trains is an integral portion of the entire service rendered by the Union Pacific Railroad Company over these branch lines and by its system generally, and that the loss sustained by the operation of these trains does not materially affect and is not an unreasonable burden on the entire system.

"6. We find that the service, even as at present rendered, is both convenient and necessary to the public, and that the operation of these trains should be continued.

### ORDER

"WHEREFORE IT IS ORDERED that the Union Pacific Railroad Company be and it is hereby required to maintain the present service inasmuch as public convenience and necessity require the continued operation of passenger trains Nos. 553 and 554 operating between Utah-Idaho State line and Preston, Idaho, and trains Nos. 559 and 560, operating between Utah-Idaho State line and Malad, Idaho.

\* \* \*

DONE AT BOISE, IDAHO, this 30th day of December, 1941, by the Commission."

■ Briefly stated, appellant attacks the sufficiency of evidence to support the findings of the Commission, Nos. 3 to 6, inclusive. To bring about the substitution, appellant contends throughout that there was, and is, no public necessity for passenger service rendered by these exclusive passenger trains on said branch lines. And secondly, the service performed by said trains does not yield an adequate return. Incidentally, and as an additional ground for discontinuance of passenger train service, appellant urges the need in the present emergency for skilled laborers who are handling these trains. For the purpose of determining whether or not the Railroad Company has established its contention, the burden rested upon it to show that the proposed passenger service would be adequate, efficient, just and reasonable. Sec. 59-302, I. C. A., provides:

"Every public utility shall furnish, provide and maintain such service, instrumentalities, equipment and facilities, as shall promote the safety, health, comfort and convenience of its patrons, employees and the public, *and as shall be in all respects adequate, efficient, just and reasonable.*" [Italics ours.]

■ We will first undertake to analyze the situation as it affects the branch line from Preston to Cache Junction, for the purpose of determining whether or not substitution of a mixed train between Preston and Cache Junction would be adequate, efficient, just and reasonable in lieu of the present passenger trains which are now operated between the two above-mentioned points. From the record it appears there are three Union Pacific Stages scheduled through Preston each way per day; in addition to this bus service, the Utah-Idaho Central Railroad Company operates an electric railroad with five schedules each way per day between Ogden, Utah, and Preston, directly connecting with the Bamberger Electric Line at Ogden. We will take judicial notice of the existence of paved highways practically paralleling the railroad lines, which materially add to necessity and convenience of the traveling public.

■ On the Cache Valley branch during a 28 day period, one passenger got on at Franklin, and undoubtedly got off at Preston; four passengers got on at Preston, and none got off at Franklin. For 28 days of September, 1941, 46 passengers were handled on train 553 [Cache Junction to Preston], or an average of 1.64 passengers per day, and 38 passengers on train 554 [Preston to Cache Junction],

or an average of 1.36 passengers per day. Total revenue over a period of 18 months for these two trains was $11,-473.80, as against an expense of $23,063.46, showing a net loss to the Railroad Company of $11,589.66. It appears there is a negligible use of passenger train service by the public, and there are adequate and efficient means of transportation to and from Preston to Logan, and Preston to Ogden, with direct connections to Salt Lake, as to reasonably accommodate the public which might have occasion to use either rail or bus service between these points. In reviewing the order of the Commission requiring appellant to continue operation of its train service as of the date of hearing, it is necessary to consider, as one of the elements, whether or not operation of passenger service only at a loss justifies discontinuance thereof when earnings of the entire system reflect no deficit. The following authorities adhere to the view loss sustained only in providing passenger service is not justification for discontinuance: Pond on Public Utilities, Vol. 3, par. 911, p. 1832; *Ft. Smith L. & T. C. v. Ward*, 169 Ark. 519, 275 S. W. 757; *Marshall v. Bush*, 102 Neb. 279, 167 N. W. 59; *Colo. etc. R. Co. v. State Rr. Comm.*, 54 Colo. 64, 129 P. 506; *Atl. Coast Line Rr. Co. v. No. Car. Corp. Comm.*, 206 U. S. 1, 27 S. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398; Nichols on Public Service & Discrimination, p. 173; *Ches. & O. Rr. Co. v. P. S. Comm.*, 61 L. Ed. 520, 37 S. Ct. 234, 242 U. S. 603; *State v. Geo. So. & Flor. Ry. Co.*, 139 Fla. 115, 190 So. 527; *So. Ry. Co. v. S. C. Publ. Ser. Comm.*, 31 Fed. Supp. 707. In other words, the fact one branch of its service reflects a loss, and, at the same time, the entire earnings of the system reflect a substantial profit, would not be decisive of its duty both under Sec. 5 and 6, Art. 11, Const., and Sec. 59-302, I. C. A., to furnish to the public adequate and reasonable service. The Company is committed to the reasonable discretion of the controlling state authority. The law enjoins what is adequate, efficient, just and reasonable service under the circumstances. This rule is as old as the law itself. If the service in all respects be adequate, efficient, just and reasonable, it would neither be just nor reasonable to impose an unreasonable and unjust economic loss on the Railroad Company, and, indirectly, on the public, to require unnecessary and useless expenditures. This is not a case in which the utility seeks to entirely abandon the service, but to minimize service to the needs and necessities of the public,

and when the public needs are met adequately, efficiently and reasonably, which is the primary and important consideration, the utility has met its obligation to the public. When we take into consideration the limited public use of passenger service, the expense and net loss to the Railroad Company in the operation of said service between Preston and Cache Junction, the available passenger service furnished by another railroad company paralleling appellant's line, bus service, and paved highways, all of which must be considered in determining whether or not such service is adequate, efficient, just and reasonable, we are forced to the conclusion the Commission's order cannot be upheld, requiring the Railroad Company to maintain present passenger service on said branch line. Furthermore, during the present emergency, the inconvenience of the public is subordinate to national defense. Changed conditions could well require that present passenger service be later reinstated.

Coming now to the question of whether or not the order of the Commission should be sustained so far as it relates to the Ogden-Malad Branch, the record shows during a 28 day period of September, 1941, only 4 passengers got on at Cherry Creek going to Malad, 23 passengers got on at Malad, and none got off at Cherry Creek. For said 28 day period, 51 passengers were handled north-bound between Ogden and Malad, or an average of 1.82 passengers per day, and on the south-bound movement there were 68 passengers handled, or an average of 2.43 passengers per day. The record discloses for an 18 month period total revenue of $13,995.81, as against a deficit expense of $34,466.88, making a net loss of $20,471.07. We have in the record no estimate of net earnings of the system; that is to say, no estimate of earnings for handling freight. Appellant has simply set up a net loss in operating passenger service. It is conceded by appellant the operation of passenger service over all railroads within the United States reflects a loss; there is not a branch line in Idaho which shows a profit in operating passenger service. As heretofore stated, it is proper to take into consideration expense of furnishing service in determining whether or not the patronage justifies the expense, however, it is not the most important question to be considered by the Commission; the controlling question being the necessity and reasonableness of the service to the public. (*Village of Millersburg v. P. U. C.,* 137 Ohio St. 75, 27 N. E. (2d) 1020.)

In *People ex rel Cantrell v. St. Louis A. & T. H. R. Co.,* 176 Ill. 512, 52 N. E. 292, it is held:

"Inasmuch as a railroad company is bound to carry both passengers and freight, and the duties and liabilities of a railroad company to passengers riding on freight and passenger trains are very different, a railroad company is obliged to furnish and operate passenger trains separate from its freight trains for the accommodation of its passengers.

"By the running of a mixed train consisting of freight, coal, stock and passenger cars, a railroad company does not discharge its duties to the public of furnishing transportation to passengers.

"Where the system of railroads under one management is paying, and the company is solvent and prosperous, it cannot escape performance of its charter duty of furnishing transportation over one portion of its road by showing that that particular portion does not pay, when all parts of the system are so interwoven that an accurate ascertainment of the profits of any one portion of the road is impracticable."

In the instant case appellant contends that it should not be required to furnish passenger transportation between Ogden and Malad for the reason that it is not profitable, and, at the same time, at least impliedly admitting its system, as a whole, as well as its branch line operations, as a whole, are profitable, and without taking into consideration its earnings in the transportation of passengers from Ogden to Brigham City on the Malad Branch. From the record it appears approximately two million bushels of wheat alone were shipped out of Malad over the branch line yearly; what was received from the shipment of all farm products, livestock, machinery, etc., over the system is not disclosed, loss being predicated on passenger service only. In 123 A. L. R. 922, the question is exhaustively discussed. From that annotation the following paragraph is quoted:

"The rule supported by the majority of the decisions is that in considering the question of whether or not a railroad company should be compelled to continue the operation of a branch line, the entire revenues of the system are to be taken into account, and not merely the direct return from the branch line itself."

In *State v. Geo. So. & Flor. Ry. Co.*, 139 Fla. 115, 190 So. 527, 123 A. L. R. 914, it is stated:

"In determining whether local train service may be reduced all revenue receipts of every nature and kind on and from the particular line and the entire system should be considered as well as the total proper expenses."

There is no parallel railroad operating from Ogden to Malad as there is from Preston to Cache Junction. There is but one bus service each day: One from Malad to Salt Lake, and one from Salt Lake to Malad, and on to Pocatello. We are also justified in taking judicial notice, due to the war, operation of motor propelled vehicles is limited to a minimum, passenger cars being practically eliminated. No doubt, the loss sustained by operation of passenger trains is reflected in the freight rates. The Commission was justified and it was their duty, to take into consideration the inconvenience the public would suffer by reason of such change in service by transmitting mail, express and baggage, as well as passenger service, all on one and the same train. As was said in *People v. St. Louis, etc. R. Co.*, supra:

"and, when a passenger rides on a freight or mixed train, he takes upon himself the increased risk and lessened comfort which is incident thereto; nor has he the legal right to demand any other care in the management of such a train than is requisite for that kind of a train, or any other security than such a mode of conveyance affords."

(*So. Ry. Co. v. S. C. Publ. Ser. Comm.*, supra; *Village of Millersburg v. P. U. C.*, supra.) Thus, in this instance, the public will be left practically without railroad passenger service, limited to the minimum in bus service, and seriously restricted in the operation of all motor vehicles. In such circumstances, the action of the Commission, in denying appellant's right to discontinue its present passenger service, and in lieu thereof substitute mixed train service, was neither arbitrary nor capricious. The Commission is vested with discretionary power, and, in the absence of abuse of such power, this court would not be justified in setting aside its order.

While there are numerous decisions on all phases of the questions here involved, no fixed or definite rule can be applied. Each case must be considered and determined

in the light of all facts and circumstances of the individual case.

We feel constrained to hold, upon the entire evidence, to substitute mixed train service in lieu of the present passenger service would not be adequate, efficient, just nor reasonable, but, on the contrary, would be inadequate, inefficient, unjust and unreasonable to the public. We have concluded to sustain the Commission's order requiring the Railroad Company to continue its passenger service on the Malad Branch.

Respondents complain by reason of appellant's failure to comply with Sec. 59-307, I. C. A., the Commission was without jurisdiction to grant appellant relief. It is conceded the Commission issued its order which was duly served upon appellant to appear and show cause, and offer testimony as to why such service should not be continued under present schedules. In pursuance to such order appellant appeared. A hearing was duly had, and testimony taken, without objections on the part of the state or protestants, and controversy decided by the Commission just as effectually as it would have been done had appellant instituted proceedings under provisions of Sec. 59-307, supra. The Commission had jurisdiction of the parties and subject matter, and jurisdiction to make the order here sought to be reviewed at its hearing in Preston, Idaho. There is no merit in respondent's contention in this regard.

The order of the Commission is hereby reversed as to the Preston-Cashe Junction feature of the order, and sustained as to the Malad Branch. Costs awarded to respondents.

Ailshie, Givens, JJ., and Koelsch, D.J., concur.

Holden, C.J. (Dissenting in part and concurring in part.)—As disclosed by the foregoing opinion, the Union Pacific Railroad Company very largely rests its right to discontinue passenger service between Preston, Idaho and Cache Junction, Utah, upon a showing of a net loss to the Railroad Company of $11,589.66, covering a period of eighteen months. The operation of passenger service on a branch line at a loss will not justify discontinuance of passenger service on such branch if the earnings of the system as a whole show a substantial profit, as in the case at bar. (*Southern Ry. Co. v. S. C. Public Service Comm.*, 31 Fed. Supp. 707; *Ches. & Ohio Ry. Co. v. Pub.*

*Ser. Comm.*, 242 U. S. 603, 61 L. Ed. 520, 37 S. Ct. 234; *Atlantic Coast Line Ry. Co. v. N. Car. Corp. Comm.*, 206 U. S. 1, 51 L. Ed. 933, 27 S. Ct. 585, 11 Ann. Cas. 398; *Colorado etc. Ry. Co. v. State Ry. Comm.*, 54 Colo. 64, 129 P. 506; *Marshall v. Bush*, 102 Neb. 279, 167 N. W. 59; *Ft. Smith L. & T. C. v. Ward*, 169 Ark. 519, 275 S. W. 757; *State v. Georgia So. & Fla. Ry. Co.*, 139 Fla. 115, 190 So. 527.)

In *Southern Ry. Co. v. S. C. Public Service Comm.*, supra, premised upon repeated decisions of the Supreme Court of the United States, the court held:

"Since, therefore, plaintiff is charged with the duty under its franchise of maintaining passenger service on the entire line of the railroad, an order enforcing that duty may not be said to be unreasonable and arbitrary merely because its performance may result in loss to plaintiff. *Atlantic Coast Line v. North Carolina Corp. Comm.*, 206 U. S. 1, 27 S. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398; *Mo. Pac. Ry. Co. v. Kansas*, 216 U. S. 262, 30 S. Ct. 330, 54 L. Ed. 472; *Chesapeake & Ohio Ry. Co. v. Pub. Ser. Comm.*, supra; *Fort Smith Traction Co. v. Bourland*, supra; *State v. Broad River Power Co., supra.* As said by Mr. Justice [later Chief Justice] White in the Atlantic Coast Line case (206 U. S. 1, 27 S. Ct. 595, 51 L. Ed. 933, 11 Ann. Cas. 398), 'As the primal duty of a carrier is to furnish adequate facilities to the public, that duty may well be compelled, although, by doing so, as an incident some pecuniary loss from rendering such service may result.'

"A case directly in point is *Missouri Pac. Ry. Co. v. Kansas*, supra, 216 U. S. 262, 263, 279, 30 S. Ct. 330, 336, 54 L. Ed. 472, where an order directing the running of a passenger train was objected to as arbitrary and unreasonable on the ground that the train could not be run except at loss to the company. In rejecting this contention, the Supreme Court, speaking through Mr. Justice White, said:

" 'The fact that the performance of the duty commanded by the order which is here in question may, as we have conceded for the purpose of the argument, entail a pecuniary loss, is, of course, as declared in the Atlantic Coast Line case, as a general rule, a circumstance to be considered in determining its reasonableness, as are the other criteria indicated in the opinion in that case. But where a duty which a corporation is obliged to render is a necessary

consequence of the acceptance and continued enjoyment of its corporate rights, those rights not having been surrendered by the corporation, other considerations are, in the nature of things, paramount, since it cannot be said that an order compelling the performance of such duty at a pecuniary loss is unreasonable.' "

In the case at bar it is conceded passenger service on the *entire* system is operated at a loss, so that if loss in the operation of branch line passenger service justifies a discontinuance of branch line service, then loss in the operation of passenger service on the entire system would likewise justify discontinuance of all passenger service. Furthermore, it is urged with much reason by protestants that lack of patronage of the passenger service between Preston and Cache Junction is "due to too poor service." Therefore, upon grounds of both law and fact, I dissent from that part of the opinion of the majority reversing the order of the Public Utilities Commission which required the Union Pacific to continue its passenger service between the last above-mentioned points.

And the grounds which prompt me to dissent from the opinion of the majority reversing the order of the Commission which required the Union Pacific to continue its passenger service between Preston and Cache Junction, lead me to concur in the majority opinion affirming the order of the Commission which required the Union Pacific to continue its passenger service on the Malad, Idaho, branch line.