310 P.2d 810

Jesse F. PETERSEN, C. B. Perkins and Earl Perkins, Plaintiffs-Respondents,

v.

Arnold G. HOLLAND and Violet Holland, Defendants-Appellants.

No. 8482.

Supreme Court of Idaho.

May 2, 1957.

William H. Bakes, Twin Falls, for appellants.

Norman H. Nielson, Burley, Leon A. Halgren, Salt Lake City, for respondents.

PORTER, Justice.

In the spring of the year 1949, respondents were the owners of a cattle ranch located in Cassia County, Idaho. Respondents listed this ranch for sale with the Max Gillette Real Estate Agency of Burley for the sale price of $210,000. The property covered by the listing consisted of 3,420 acres of land, 600 head of cattle, 100 head of weaner calves, certain other personal property and certain grazing rights on government land.

The real estate agency engaged the services of appellant, Arnold G. Holland, to assist in the sale of the listed property. Holland was a real estate man operating out of Ogden, Utah, and out of Felt, Idaho, where he owned and lived upon an extensive dry farm. Holland went to the cattle ranch and looked it over in order that he might become familiar with it. On June 27, 1949, Holland came to the ranch with a prospective purchaser. Holland expressed a desire to purchase the ranch if his prospective purchaser did not buy. The prospective purchaser did not take the ranch and during the summer there were several communications between respondent Petersen and Holland consisting of letters and telephone calls.

On August 27, 1949, Holland again came to the ranch and he and Petersen again looked over the ranch and part of the rangeland. According to the testimony of Petersen, they came to a tentative agreement for the sale of the property for $168,000, including 500 head of cattle instead of 600 head.

On September 8, the parties met in Burley at the office of attorney Adonis Nielson where a formal contract of sale was prepared and signed. The sale price was $168,000. The cattle included in the contract were described as follows:

"500 head of hereford cattle, including bulls, cows and two-year olds and yearlings; Also 100 head of weaners, together with all other cattle located on the Randell lands (referring to the real estate above described)"

By the terms of the sale there was a balance to be paid to respondents in the sum of $17,809.87 which was represented by a promissory note secured by a real estate mortgage on the land contained in the ranch.

The promissory note provided for the payment of $10,000 on October 13, 1950. Appellants having defaulted and failed to make $7,000 of such payment, respondents started this action to foreclose the real estate mortgage. Appellants, as a defense, alleged they had been damaged by alleged

fraud of respondents in the transaction in an amount in excess of the balance due on the promissory note. Trial was had before the court sitting without a jury. The court made findings of fact and conclusions of law favorable to respondents and entered a judgment of foreclosure. From such judgment appellants have appealed to this court.

By their assignments of error, appellants set out that the court erred in making most of its findings of fact and conclusions of law, their apparent theory being that the evidence is insufficient to support the findings and judgment against appellants. On their contentions of fraud appellants state in their brief that the only two points in disagreement are the number of cattle to be received by appellants and the range rights; and only those two points are argued in their brief.

Appellants contend that they were to receive the 600 head of cattle mentioned in the original listing and that respondents fraudulently induced them to sign the contract of sale wherein only 500 head of cattle and all other cattle on the ranch were listed. Holland testified that respondents persuaded them to sign the contract of sale by stating that there were 600 head of cattle on the place which appellants would eventually receive, but that it would take some time to gather such cattle and respondents wanted a quick deal and would only put 500 head of cattle in the contract of sale. This testimony is denied by respondents.

Appellants further contend they inquired of respondents as to whether any cattle had been sold and respondents evaded answering such question and misled appellants into believing that there had been no sales made. Respondents did not deny that some 63 head of cattle had been sold at Burley in July, 1949, at a time prior to any agreement with appellants. Respondent Petersen denied he had ever advised appellants that no cattle had been sold. Actual count of the cattle in January, 1950, determined the gather to be 535 head of cattle.

From Holland's letters and from the memorandum of the terms of sale made by him on August 27th, it is evident he well knew that respondents would not guarantee to deliver more than 500 head of cattle together with the calf crop of at least 100 head. There is substantial evidence to sustain the findings of the trial court that appellants were not deceived as to the number of cattle they were to receive and that they did receive all the cattle called for by the contract of sale.

The second claim of fraud made by appellants is in connection with the Marsh Creek range rights. Such range rights were cut for 1950 from 147 head of cattle to 35 head. Appellants contend that respondent Petersen knew that such cut was to be made and did not reveal such fact

to appellants. The evidence discloses that Holland rode onto such range with Petersen and Holland looked it over for himself; that the grass was very sparse; and that Petersen told Holland that a reseeding program was to be put into effect on such range. Petersen testified that he called Holland's attention to an agreement by a former owner with the Forest Service for a cut in the number of cattle. The evidence does not disclose that Petersen knew how much of a cut was to be made in the number of cattle allowed on such range. Petersen took Holland to the office of the Forest Service to check up on the range rights; and Holland also made a trip or two to such office but the evidence is not clear as to whether Holland ever actually talked with the Forest Service about the range rights.

It does not appear convincingly that Petersen deceived Holland as to the situation in connection with the Marsh Creek range. Furthermore, Holland personally examined such range and appeared to rely on his own judgment and investigation, and not upon alleged false representations by Petersen. Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Smith v. Johnson, 47 Idaho 468, 276 P. 320; Breshears v. Callender, 23 Idaho 348, 131 P. 15.

■ Fraud is never presumed but must be established by clear and convincing evidence, especially where integrity of written instrument is assailed. West v. Prater, 57 Idaho 583, 67 P.2d 273; Smith v. Johnson, supra; Smith v. Thomas, 42 Idaho 375, 245 P. 399.

■ Fraud will not be presumed and appellants had the burden of establishing all the elements of fraud alleged by clear and convincing evidence. Paurley v. Harris, 77 Idaho 336, 292 P.2d 765; Cooper v. Wesco Builders, 76 Idaho 278, 281 P.2d 669; Nelson v. Hoff, supra; Lott v. Taylor, 60 Idaho 263, 90 P.2d 975; Green v. Bruck, 58 Idaho 401, 74 P.2d 85.

The evidence of fraud in this case is not so clear and convincing that this court can say as a matter of law it was error for the trial court to find that fraud had not been established.

■ The findings of fact of the trial court against the claims of fraud are supported by competent, substantial, although conflicting, evidence. We have reiterated again and again that findings of fact by the trier of the facts, if supported by competent, substantial, though conflicting, evidence, will not be disturbed on appeal. Nelson v. Hoff, supra; Summers v. Martin, 77 Idaho 469, 295 P.2d 265; Blue Bell Co. v. Employment Security Agency, 75 Idaho 279, 270 P.2d 1054.

The judgment of the trial court is affirmed. Costs awarded to respondents.

KEETON, C. J., and TAYLOR, SMITH and McQUADE, JJ., concur.