346 P.2d 623

**Alberta G. MORROW, Plaintiff-Appellant,**

v.

**WM. BERKLUND FOREST PRODUCTS CO., a co-partnership, Defendant-Respondent.**

**No. 8725.**

Supreme Court of Idaho.

July 6, 1959.

Rehearing Denied Nov. 18, 1959.

Allan G. Shepard, Wm. R. Padgett, Boise,
Givens, O'Leary, Doane & Givens, Boise,
for appellant.

J. H. Felton, Lewiston, J. L. Eberle, Boise, and Ray McNichols (amicus curiae), Orofino, for respondent on petition for rehearing.

TAYLOR, Justice.

Plaintiff (appellant), a widow, is the owner of a cattle ranch, about 18,400 acres in extent, upon which she grazes from six to eight hundred head of cattle. Her ranch is in an area known as the Joseph Plains, between the Snake and Salmon rivers, in Idaho county. Since the death of her husband in 1943 she has operated this ranch with the aid of one hired man. The ranch is accessible in summer over a difficult road, which requires a vehicle with four-wheel drive. In winter access to the outside is gained only by boat on the Snake river or by horseback over the plains to Cottonwood.

The plaintiff had had only an eighth-grade education and her business experience was limited to the raising, buying and selling of cattle. Although she was familiar with the boundaries, corners and description of her land and had observed the timber growing thereon, she had never sold any timber and was wholly inexperienced in, and had no knowledge of, the cruising or estimating of timber.

In early August, 1948, one, L. L. Spafford, sought from plaintiff an option to buy the merchantable timber on her property. He advised plaintiff that he was

working for defendants, who were lumbermen of Big Bay, Michigan; that defendants were not interested in any of the timber standing on steep slopes, gullies, or creek bottoms; they wanted to buy only the timber on the level plateau. After Spafford had spent some time traveling over and observing plaintiff's lands, he prepared an option agreement, dated August 9, 1948, which he and plaintiff executed, providing for a sale to Spafford of all merchantable timber standing upon the land described therein, totaling approximately 5,000 acres. The price of the timber fixed by the option was $4.50 per thousand board feet for pine and $3 per thousand board feet for larch, fir and spruce. The option also contained the following provisions:

"It is a mutual agreement by and between the seller and purchaser that the said timber shall be cruised by a competent cruiser agreeable to both parties and upon the completion of the cruise which shall then become a part of this contract or agreement showing the value of all species of timber on this tract.

"Upon the cruise of said timber being made, each party hereto shall be given a copy thereof and the purchaser will thereafter pay three per cent (3%) interest on the unpaid balance of the price of said standing timber as shown by said cruise.

"In case the cruise made by the purchaser is not satisfactory, the seller can have this cruised at their own expense. In case it is not satisfactory to either party the two cruisers can appoint a third cruiser in *whose* case will be final. Second and third cruise paid by seller."

Spafford told Mrs. Morrow competent cruisers were hard to get, and it might be some time before they would be able to get one. He also told her that William E. Berklund, also known as William Berklund, Jr., had had experience and would be a reliable and competent cruiser, and would cruise the property.

The defendant (respondent) is a partnership, in which William C. Berklund, Olga C. Berklund, William E. Berklund, Curtis J. Berklund and Jane B. Hamil are the partners. The defendant is the successor in interest of William Berklund Forest Products of Big Bay, Michigan, a partnership composed of William C. Berklund and Olga C. Berklund. William C. Berklund is the father of William E. Berklund, and the two are sometimes referred to in the record as William Berklund, Sr., and William Berklund, Jr., respectively. At the time of the Morrow transactions, William Berklund, Jr., was not a member of the partnership, but was taken into the present partnership after the family moved to Idaho. William Berklund, Sr., testified that the present partnership is largely held by

him and his wife. William Berklund, Sr., had been in the timber and logging business for thirty-five years, in the milling business for ten years, and had been doing cruising since 1939. He estimated he had purchased a total of 150,000,000 board feet of timber. His son, William, Jr., had worked with him in the cruising and timber business since 1939.

After the date of the option the William Berklunds, Sr., and Jr., with the part time help of a third man, spent some considerable time upon plaintiff's lands examining the timber.

October 12, 1948, at the invitation of one, Butcher, a son-in-law of plaintiff, the two William Berklunds met with Mrs. Morrow, in Cottonwood, in an apartment of another son-in-law of plaintiff. There negotiations took place during which Berklunds informed plaintiff that they had examined the timber on her property and estimated the volume and, being asked by her what their findings were, exhibited to her three small sheets of note paper, upon which were written two columns of figures, one headed "Pine" and the other "Fir". The totals at the bottom were, pine 7105 M, fir 1263 M, purporting to represent a volume of 7,105,-000 board feet of pine, and 1,263,000 board feet of fir. Mrs. Morrow then asked Berklunds if they did not think there was more timber than that on the property; to which they answered, no, that was all they could

"get". Plaintiff then advised them she had had a cruise made by one, Edwards, of approximately 520 acres and showed them his report. Berklund, Sr., then directed his son to take the Edwards cruise and compare it with their own. Whereupon, William, Jr., took the Edwards report and left the apartment. A half hour or an hour later he returned and advised that the comparison showed that the Berklunds' cruise was "a little bit low." The plaintiff expressed a desire to sell ten million board feet for $45,000 and offered to add additional land on the Salmon river slopes, accessible along the existing road, sufficient to make up the ten million board feet. The Berklunds agreed to this proposal, provided the percentage of fir shown by their cruise be taken into consideration, and the price for the ten million board feet adjusted accordingly.

Plaintiff's exhibits 10 and 11 show that final agreement was reached upon this basis: 8,437,000 board feet of pine at $4.50 per thousand, $37,966.50; 1,563,000 board feet of fir at $3 per thousand, $4,689.00; or a total price of $42,655.50. This was the consideration expressed in the "warranty timber deed." The deed was prepared by Spafford some time after the meeting of October 12, 1948, but was dated January 10, 1949. In explanation of this delay, William Berklund, Sr., testified that at the meeting on October 12, Mrs. Morrow inquired about the effect on her income tax and said,

"I sold a lot of cows this year and I would rather not have too much money coming in." So it was agreed that the transaction would be effective January 10th.

The deed, subsequently executed by plaintiff, provided for payment of the agreed consideration in installments over a period of years extending to January 10, 1954. The consideration has been fully paid.

In the summer of 1956, William Berklund, Jr., made another examination of the timber. Mrs. Morrow, having heard that the Berklunds were cruising timber on her property, and on other properties in the general area, upon which they had also acquired timber, and were selling therefrom timber in much greater volume than they had represented to the owners at the time of purchase, became suspicious as to the correctness of the volume of timber reported to her by Berklunds at the time of the sale. She thereupon employed one, Robert S. Nobis, to make a cruise of the timber covered by her deed to defendant. Nobis was well qualified, both by training and experience. He conducted a cruise of the property in November, 1956. Where the stand of timber was continuous and without breaks, he did a 10% cruise. Where the stand was not continuous he did a 20% cruise. On 20 to 25 forties, where there were "long stringers" of timber, or small groups, "not susceptible to percentage cruises", he did a 100% cruise; that is, he counted and measured all merchantable trees. He also made random borings of all the types of trees except larch and spruce, and in all aged trees and in the various locations and growing conditions existing on the land, to determine the volume increment between 1948 and 1956. He also calculated the amount of timber which became merchantable during that period, and recently dead timber found on the property. After deducting the amount of the increment, new timber and recently dead timber from the total volume found by him, Nobis reported a total volume of 22,134,000 board feet of merchantable timber on the property in 1948. Eliminating the larch and spruce not conveyed by the deed, the volume by species, as reported by Nobis, was 17,647,000 board feet of pine, 4,487,000 board feet of fir.

Thereafter, December 27, 1956, Mrs. Morrow commenced this action, praying for rescission and cancellation of her option and deed on the ground of fraud, and offering to make restitution to defendant of the consideration received.

The complaint charges that the defendant fraudulently misrepresented the volume of timber upon the property, and fraudulently concealed from her the true volume thereof; also alleges that defendant represented to plaintiff that defendant was not interested in timber standing on steep slopes, or in gullies or creek bottoms, and

that the option and deed did not cover such timber. In support of this last allegation, plaintiff testified that at the time she executed the option no real property was described therein; that she had not seen the option from the time she signed it until the day the deed was prepared and executed; that at that time the defendant had attached to the option a sheet containing the real property description; that she executed the deed without examining the description either in the option or the deed, relying upon defendant's representation that the sale would not include timber so located. We do not further consider this latter charge of fraud. It was not made a basis of the trial court's judgment, and the conclusion we reach makes it unnecessary to determine such issue on this appeal.

In its answer the defendant, in addition to a general denial, "denies the execution and existence of the so-called option and its attached addendum; and denies that this defendant is in any way connected with such option, the procurement and execution thereof; * * * alleges that timber upon the lands described in the 'Warranty Timber Deed' is now the property of William Berklund Forest Products Company, a Partnership". Defendant also filed a cross complaint, seeking to quiet its title.

After trial the court found that Spafford was the authorized agent of defendant, had obtained the option for the defendant, and

that the consideration therefor was paid by defendant. In addition to finding facts substantially in accord with the statement of facts hereinabove set out, the court found:

"William C. Berklund informed plaintiff that the Berklund cruise was right. Plaintiff indicated that she wanted to sell ten million feet of timber and informed the Berklunds that she would like to close the deal then and did not want to wait for another year or so until a proper cruise could be made.

\* \* \* \* \* \*

"That the plaintiff further pleaded that the Berklunds made fraudulent representations to her as to the amount, quantity and location of the timber and that she was without means of knowledge or knowledge thereof, but from the evidence the Court finds that the plaintiff did not rely upon the representations of the Berklunds or their agent, Mr. Spafford, and that she did have the means of knowledge."

Among the court's conclusions is the following:

"That the plaintiff has failed to establish by clear and convincing evidence any fraud or fraudulent representation and has failed to make satisfactory proof of any element of fraud pleaded upon which a cancellation of the deed is sought, and did establish

that she came to an agreement by negotiation, being unwilling to wait until a correct cruise could be made."

The record is without dispute that defendant misrepresented to plaintiff the volume of timber upon the property, as the court in effect found. The evidence is also conclusive, and as admitted by the William Berklunds, in their testimony, that defendant did not furnish to plaintiff a copy of its cruise of the timber as provided by the option, but instead concealed the cruise from her, except for the figures and the totals written on plaintiff's exhibit 3.

The court's finding that plaintiff did not rely upon the representations made by the Berklunds, or their agent, Spafford, is apparently based upon the fact that she had a cruise made by Edwards and had his report thereof, because this is the only evidence in the record in any way indicating that she had any previous knowledge of the amount of timber upon her property. The Edwards cruise covered a comparatively small part of the total timber land involved. In addition plaintiff's exhibit 3, contained no property descriptions or any reference to subdivisions or locations. Thus, as testified by both Berklunds, it would be impossible to compare the figures, which they furnished plaintiff, with the Edwards cruise report. Hence, plaintiff was in no position, by means of any knowledge she possessed, including the Edwards report, to determine whether the figures given her by defendant were correct. The only other information she had was the statement made by William Berklund, Jr., after he had gone out to the Berklunds' automobile and compared the Edwards report with the Berklund cruise, that the latter was "a little bit low." As to this, Mrs. Morrow testified that she had confidence in Mr. Spafford and believed what he told her, including his statement as to the competency and reliability of William Berklund, Jr., as a cruiser; and that she had confidence in and believed the representations made by both the Berklunds, and "I thought if it was just a little low it didn't make much difference."

In addition she testified that she accepted and relied upon the figures given her, and the verbal statements made to her, by the Berklunds; and that she would not have made the sale or executed the deed had she known that those representations were false. We find no substantial evidence in the record to support the court's finding that plaintiff did not rely upon Berklunds' representations as to the volume of the timber. On the contrary the fact that she offered to include additional land in order to make up the difference between the volume of timber reported to her by Berklunds, and the 10,000,000 feet which she proposed to sell, indicates she was accepting and relying on their representations as to the volume of timber under option.

The finding that plaintiff "would like to close the deal then and did not want to wait for another year or so until a proper cruise could be made", is supported only by the testimony of William Berklund, Jr., to the effect that at the meeting of October 12th, "Mrs. Morrow said ·that she would like to sell her timber, for forty-two thousand and some hundreds of dollars, rather than to have the deal dragging on and waiting over to another year."

Mrs. Morrow testified that she at that time did not care whether she sold the timber or not. William Berklund, Sr., testified that she said she wanted the completion of the deal deferred until January 10th because she didn't want too much money coming in during 1948, on account of the effect upon her income tax. It is evident she was not in need of money at the time the sale was agreed upon. It is true, as defendant contends, plaintiff could have had an independent cruise made, but she was not obliged to do so. The Berklunds were experts of long experience in the cruising and buying of timber. Plaintiff, on the other hand, was a cattle rancher, without any knowledge or experience in the timber business. Under the circumstances she was entitled to rely upon the report and representations made to her by the Berklunds.

Dahl v. Crain, 193 Or. 207, 237 P.2d 939, is a case in point. That was an action for specific performance of a timber sale contract brought by the buyer against the seller. Like the plaintiff here, the seller knew there was timber on his land, but had no definite knowledge of the amount, and was inexperienced in such matters. On the other hand, the agent of the buyer was an expert of long experience in estimating and buying timber. The agent procured a cruiser, and instructed the cruiser to include only timber which could be handled at a profit in the type of mill contemplated by the buyer. After the cruise was made, the agent represented that the amount shown thereon was all of the merchantable timber on the property. Acting thereon, the owner executed a contract of sale. Two years later the buyer proposed to sell to a third party. The third party had a cruise made which revealed a substantially larger volume of timber. The seller refused to complete the transaction; the buyer brought action for and was awarded specific performance by the decree of the trial court. The Supreme Court of Oregon reversed the decree and directed the cancellation of the contract of sale, on the ground the parties were not dealing at arm's length on an equal footing; that the buyer having undertaken to procure a cruise for both parties, was required to make a full disclosure of all facts affecting the result; and having misrepresented the amount of timber, the seller was entitled to relief, even if the representation had

been innocently made without fraudulent intent.

"The general rule is that when inquiry is made concerning the value of the property, the person to whom such inquiry is directed, if he undertakes to answer, must make full and fair disclosure and not conceal pertinent or material information. And so, if the vendor, being unacquainted with the land, inquires of the vendee what the land is worth or makes inquiry concerning some particular matter bearing upon its value, it becomes the purchaser's duty to speak the truth, if he undertakes to speak at all; in such cases a concealment or suppression of the truth, where coupled with any actual misrepresentation or overreaching, however slight, may be sufficient to entitle the vendor to have the deed set aside, the circumstances amounting to fraud or deceit. Fraud may be predicated upon an equivocal, evasive or misleading answer calculated to convey a false impression even though it may be literally true as far as it goes. A partial and fragmentary disclosure accompanied by wilful concealment of material and qualifying facts is not a true statement and is often as much a fraud as an actual representation." 55 Am.Jur., Vendor and Purchaser, § 88, pp. 563–64.

The same rule applies to personal property. 77 C.J.S. Sales § 45.

In this case the option contract expressly required the buyers to give a copy of the Berklund cruise to the plaintiff. Their failure to do so, coupled with their misrepresentation of the volume of timber, was a breach of duty entitling plaintiff to rescind the conveyance.

■ Respondent urges as controlling here the rule that fraud is never presumed, but must be established by clear and convincing evidence, especially where the integrity of a written instrument is assailed, citing a number of cases, including Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Petersen v. Holland, 79 Idaho, 63, 310 P.2d 810; Scogings v. Love, 79 Idaho 179, 312 P.2d 570. In those cases the parties dealt at arm's length on an equal footing and no confidential or trust relationship existed. The rule there announced is not applicable in this case. Here the buyer possessed superior knowledge of the facts represented, and knowing that the seller had no such knowledge, undertook to inform the seller as to the volume of timber involved in the sale. Under such circumstances a relationship of trust and confidence arose which imposed upon the buyer a duty to make a full, fair and complete disclosure. In Stearns v.

Williams, 72 Idaho 276, at page 288, 240 P.2d 833, 840, we said:

"A fiduciary relationship does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence. (Citations).

"Oftentimes the terms 'fiduciary relation' and 'confidential relation' are used interchangeably, (Citations); the confidential relationship which is protected in equity is synonymous with fiduciary relationship, (Citations); it exists whether the relationship is technically fiduciary or merely informal, whenever one trusts in and relies on the other, * * *."

In Fox v. Cosgriff, 66 Idaho 371, 159 P. 2d 224, a director of a bank, in response to an inquiry by a stockholder, misrepresented the value of bank stock, which certain officers of the bank desired to purchase. The bank officials were possessed of knowledge of an impending liquidation which would enhance the value of the stock, which knowledge was not available to the stockholder. This court held that a fiduciary relationship arose imposing the duty upon the officers of the bank to make a full ᴜɪ - closure of the facts within their knowledge, and quoted with approval from 26 C.J. 1219:

"'If the parties deal on unequal terms the rule that misrepresentations of value are nonactionable expressions of opinion does not apply and under such circumstances they will constitute remediable fraud, as where the facts are peculiarly within the knowledge of the speaker and difficult for the hearer to ascertain.'" 66 Idaho at page 383, 159 P.2d at page 229 [See also 37 C.J.S. Fraud § 57].

The defendant further contends that the evidence is insufficient to show that the representations made by Berklunds were known by them to be false, or that they were made with the intention to deceive the plaintiff. This is an extension upon the general rule, above noted, to the effect that knowledge of the falsity of the representation, and an intent to deceive are essential elements of actionable fraud, and as such must be proved by clear and convincing evidence.

The conclusion of the trial court hereinabove quoted, indicates that the court followed and applied the general rule as to actionable fraud. This was error. The applicable principle is stated in 2, Restatement of Contracts, § 476, pp. 908–9:

"(1) Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material misrepresentation,

the transaction is voidable as against the latter and all who stand in no better position, * * *.

"b. Innocent material misrepresentation though not accompanied by negligence has the same effect as fraud in rendering a contract or discharge voidable."

In Turner Agency v. Pemberton, 38 Idaho 235, at page 239, 221 P. 133, 135, this court said:

"* * * The trial court was evidently of the opinion that the representations alleged must have been made knowingly and willfully and with intent to deceive in order to be material. It therefore confined itself to finding that respondent did not make such representations knowingly, willfully and with intent to deceive. The idea back of this evidently was that an actual fraudulent intent would have to be proved to make a defense. Generally speaking, this is true. There is, however, a well-established exception in a case where the circumstances impose upon the vendor a special duty to know the truth of his representations, or where the nature of the situation is such that he is presumed to know the facts to which his representation relates. * * * In such cases a misrepresentation is fraudulent even though not made knowingly or willfully or with actual intent to deceive."

In Goody v. Maryland Casualty Co., 53 Idaho 523, at page 529, 25 P.2d 1045, a real estate broker, whose duty it was to clear the title, falsely represented to purchaser that a mortgage had been released, and thereupon received the balance of the price. It was held that the buyer was entitled to rely on the representation and was not required to search the public records. Referring to Baird v. Gibberd, 32 Idaho 796, 189 P. 56, the court said:

"an action for fraud or deceit cannot be predicated upon the mere expression of an opinion when the facts are equally within the knowledge of the parties, but also states that one has a right to rely upon a statement of a material fact made as a positive assertion under circumstances from which it is fairly inferable that the parties making the statement knew that the former was relying expressly upon their representations, and that under such circumstances the one to whom the representations are made is under no obligation to inquire into their truth or falsity. See, also, Burger v. Calek, 37 Idaho 235, 215 P. 981, and Gridley v. Ross, 37 Idaho 693, 217 P. 989." 53 Idaho at page 529, 25 P.2d at page 1047.

See, also, Watson v. Molden, 10 Idaho 570, 79 P. 503; Turner Agency v. Pemberton, 38 Idaho 235, 221 P. 133; Detroit Fire & Marine Ins. Co. v. Sargent, 42 Idaho 369, 246 P. 311; Lanning v. Sprague, 71 Idaho

138, 227 P.2d 347; Weitzel v. Jukich, 73 Idaho 301, 251 P.2d 542; Galvin v. Appleby, 78 Idaho 457, 305 P.2d 309; Arrowsmith v. Nelson, 73 Wash. 658, 132 P. 743; Gibbins v. McLaughlin, 79 Idaho 410, 319 P.2d 189; Barry v. Orahood, 191 Okl. 618, 132 P.2d 645; Dittbrenner v. Myerson, 114 Colo. 448, 167 P.2d 15; Brown v. Hassenstab, 212 Or. 246, 319 P.2d 929; King v. Lamborn, 9 Cir., 186 F. 21; Cooper v. Schlesinger, 111 U.S. 148, 4 S.Ct. 360, 28 L.Ed. 382; Jackson v. Seymour, 193 Va. 735, 71 S.E.2d 181.

In the case of Columbia River Door Co. v. Priest, 128 Or. 359, 274 P. 116, the court was dealing with a contract for the exchange of timber tracts for other property. The deed recited that the tracts contained a specified quantity of merchantable timber, "more or less." The court said:

"* * * There is no conflict in the evidence as to the amount of timber on the land. It is less than half the quantity represented by defendants in their contract and deed. The words 'more or less' would permit a slight and immaterial variation from the quantity specified, but it would amount to misrepresentation and breach of warranty where there is such a substantial and material variance as disclosed by the undisputed testimony in this case." 274 P. at page 117.

That proposition is applicable here. When William Berklund, Jr., advised the plaintiff that the Berklund cruise was "a little bit low", compared to the Edwards cruise, Mrs. Morrow had a right to believe that the difference was not great. The words, "a little bit low" would permit of some variation, but would not permit of a difference of more than 100%, as shown by the Nobis cruise.

McNabb v. Brewster, 75 Idaho 313, 272 P.2d 298, deals particularly with undue influence. However, circumstances under which a victim of fraud may be relieved of the burden of proof, are there stated. In the present case wo do not hold that the burden of proof shifted to defendant to show that the transaction was free of fraud or overreaching. We hold only that the evidence, disregarding that which is conflicting, clearly establishes that plaintiff is entitled to rescission and cancellation.

The plaintiff acted promptly on discovering the fraud. The record shows that none of the timber has been removed, either by the defendant or by any third party to whom it may have sold timber. Nothing has occurred, so far as the record before us shows, since the execution and delivery of the timber deed, to indicate that restoration by plaintiff to the defendant of all considerations and benefits received, and reimbursement for taxes paid by defendant, and any legitimate expenses incurred by defendant in reliance upon the deed, or in the improvement or protection of the property, will not make defendant whole.

The judgment is reversed and the cause is remanded with directions to the trial court to determine the amount necessary to be paid to defendant by plaintiff to compensate for benefits received by her and to enter judgment rescinding and cancelling the option and deed, and quieting plaintiff's title, upon the making of such restitution.

Costs to appellant.

PORTER, C. J., and SMITH and Mc-QUADE, JJ., and GRAF, District Judge concur.

KNUDSON, J., not participating.

On Petition for Rehearing

TAYLOR, Justice.

Respondent's petition for rehearing urges error in our finding that plaintiff (appellant) is entitled to rescission and cancellation of the option and timber deed. Two principal grounds are advanced to support this contention.

 First, that the option and deed may not be rescinded and cancelled because certain of the parties to them are not parties to this litigation. With respect to the option, it is contended the optionee, Spafford, is a necessary party. This contention is without merit. The record is conclusive that he acted solely as the agent of the first partnership, and that the option was actually exercised by that partnership. The option thus became functus officio. Moreover, any personal interest in it which the agent may have or claim is in no way affected by the judgment herein. He may have been a proper party, but is not a necessary party. As to the timber deed, it is urged that the first partnership, the grantee therein, is a necessary party. The record i conclusive that the defendant (respondent) is successor in interest of the first partnership. Defendant does not stand in the position of a bona fide purchaser for value without notice.

The second ground of error urged is that the timber was sold by defendant to the Prairie Lumber Company, and a down payment of $50,000 was made by the Prairie Lumber Company thereon prior to the commencement of this action. Mrs. Olga C. Berklund testified that the timber had been sold to the Prairie Lumber Company on a conditional sales contract and that a down payment of $50,000 had been made thereon. William Berklund, Sr., testified that the timber had been sold to the Prairie Lumber Company; he could not remember the date except that it was in the winter of 1956–57. He further testified that under the contract the buyer pays for the timber as it is taken off, and that so far as he knew no timber had been taken off the Morrow lands. Neither the date of the

contract nor any of its terms are shown by the record.

In support of its contention that innocent third parties would be adversely affected by rescission and cancellation herein, and that such third parties are entitled to their day in court before such remedy can be granted, defendant has presented to this court, attached to its petition for rehearing, affidavits of O. C. Berklund, Curtis J. Berklund, and of its counsel, J. H. Felton.

The affidavit of O. C. Berklund has attached to it a newspaper clipping containing a news item of a sale of timber by defendant to the Prairie Lumber Company, and also a copy of the purported contract of sale. The purported contract is dated December 6, 1956. These affidavits and exhibits contain many evidentiary statements which could have been presented in evidence upon the trial under proper pleadings. Other purported facts set forth in the affidavits and exhibits, attempt to show what has transpired subsequent to the trial and during and pendency of this appeal.

In the affidavit of Olga C. Berklund it is alleged that the Prairie Lumber Company has cut and removed "several millions of feet of timber" from the Morrow lands. Assuming these facts to be properly before this court, it is hardly conceivable that any timber was taken during the twenty-one days in December, intervening between the date of the contract of sale and the date this action was commenced and lis pendens filed, December 27, 1956. Removal of timber by the Prairie Lumber Company subsequent to the date of filing of lis pendens would be done at its peril. I.C. § R. 5–505. As stated in the opinion, defendant in its answer alleged that at the date thereof, March 13, 1957, it was the owner of the timber. Such ownership was not alleged to be limited or qualified by sales contract or otherwise. Nor did defendant seek to amend its pleadings to conform to the proof that a sale had been made.

New issues cannot be framed in this court, nor can new or additional evidence be presented on appeal. 3 Am.Jur., Appeal and Error, § 835; Gibson v. Enright, 135 Kan. 181, 9 P.2d 971; Schmidt v. Equitable Life Assur. Soc., 376 Ill. 183, 33 N.E.2d 485, 136 A.L.R. 1036. In the affidavit of counsel for defendant it is alleged that the trial judge took judicial notice of a part of the record in a prior action between these parties. This allegation is supported by the record before us. However, the record so noticed was not made a part of the record on this appeal, and therefore cannot be considered. Preston A. Blair Co. v. Rose, 56 Idaho 114, 51 P.2d 209; Rea v. Rea, 195 Or. 252, 245 P.2d 884, 35 A.L.R. 2d 612. The motion of plaintiff to strike the affidavits and exhibits attached to defendant's petition for rehearing is granted.

■ However, the petition for rehearing does present a strong appeal to equity on grounds which are supported by the record. The first of these is the lapse of time intervening between the date of the timber deed, January 10, 1949, and the commencement of this action, December 27, 1956—practically eight years. Over seven years elapsed from the date of the deed to the discovery of the fraud, by Mrs. Morrow in the summer of 1956. During this time the plaintiff had the use of the purchase price paid for the timber from the date the down payment and installments were paid, beginning January 10, 1949, and ending January 10, 1954. Also, we may take notice of the fact that during this period the value of timber and timber products greatly increased. State v. ex rel. Graham v. Enking, 59 Idaho 321, 82 P.2d 649; In re Union Pacific R. Co., 64 Idaho 597, 134 P.2d 1073. The fact that a sale of timber was made by defendant to a third party, which the record indicates could have been made before this action was commenced, which sale included the timber on the Morrow lands, and upon which a down payment of $50,000 was made, tends to show that an innocent third party may be adversely affected by a rescission and cancellation of the deed. This is so even though the sale was conditional and the timber was to be paid for as removed, and even though none had been removed at the time of trial. The buyer may have materially changed its position in reliance upon the long continued recognition by plaintiff of her timber deed to defendant. The down payment of $50,000, a part of which would be considered applicable to the purchase of plaintiff's timber, is some evidence of a reliance by the purchaser upon plaintiff's long acquiescense in her sale to defendant. This long acquiescence on the part of plaintiff tends to show want of diligence on her part in discovering the fraud. This lapse of time between the making of the deed and the commencing of the action to rescind it, distinguishes this case, in that respect, from Dahl v. Crain, 193 Or. 207, 237 P.2d 939, cited in our original opinion. In that case the time lapse was approximately two years.

Having regard for the foregoing equitable considerations, we have concluded to vacate the mandate originally entered. The option and deed will not be rescinded and cancelled, but the deed will be limited to, and recognized as, a conveyance from plaintiff to defendant of 8,437,000 board feet of pine and 1,563,000 board feet of fir, and no more. When that amount of timber has been removed from plaintiff's lands by the defendant, its transferee or successor, the conveyance shall be fully satisfied and the obligation of the deed fully discharged.

The deed provides:

"This timber deed is given for a period of fifteen (15) years, beginning January 10, 1959.

"In case the purchaser fails to remove the timber in the time limits set by this agreement, the seller shall grant the purchaser additional time upon the conditions that the purchaser pay the seller five (5) per cent per annum upon the value of the timber remaining until timber has been removed."

The district court is directed to provide for the performance by defendant of these and other pertinent provisions of the deed; also, that once logging is commenced upon any subdivision of plaintiff's property, such logging shall continue, weather permitting, until such subdivision is logged clean of all merchantable timber. The decree shall define merchantable timber and contain such other provisions as the district court may find necessary to protect plaintiff against selection by the defendant, its agent, transferee, or successor, of the best or most desirable timber on her lands or any subdivision thereof, leaving to the plaintiff the less desirable of any of the species covered by the deed.

The district court is directed to take any additional evidence it may deem necessary or desirable, and to enter its decree in conformity herewith.

The judgment denying relief to plaintiff is reversed and the judgment giving effect to the option and deed, as modified herein, is affirmed.

Costs to appellant.

PORTER, C. J., and SMITH and McQUADE, JJ., and GRAF, D. J., concur.